```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
                    CENTRAL DIVISION
                  LEXINGTON, KENTUCKY

UNITED STATES OF AMERICA,      ) Lexington Criminal
                               ) Action No. 13-36
        Plaintiff,             )
                               ) At Lexington, Kentucky
-vs-                           )
                               ) September 25, 2013
TROY LEE MELLOTT,              ) 11:00 a.m.
                               )
        Defendant.             )



        TRANSCRIPT OF SENTENCING HEARING PROCEEDINGS
         BEFORE THE HONORABLE DANNY C. REEVES
              UNITED STATES DISTRICT JUDGE



Appearances:

On behalf of Plaintiff:     JOHN HAYNE, ESQ.
                            HYDEE R. HAWKINS, ESQ.
                            Assistant U.S. Attorneys
                            260 West Vine Street
                            Suite 300
                            Lexington, Kentucky  40507

On behalf of Defendant:     ELIZABETH SNOW HUGHES, ESQ.
                            Green Chesnut & Hughes PLLC
                            201 East Main Street
                            Suite 1250
                            Lexington, Kentucky  40507

Court Reporter:             PEGGY W. WEBER, RPR
                            Official Court Reporter
                            U.S. District Court
                            P.O. Box 362
                            Lexington, Kentucky  40588
                            (859) 421-0814



Proceedings recorded by mechanical stenography,
transcript produced by computer.
```

```
 1        (Whereupon, the Sentencing Hearing proceedings

 2   commenced on Wednesday, September 25, 2013, at

 3   11:00 a.m., on the record in open court, as follows.)

 4             THE COURT:  Thank you.

 5             Good morning everyone.

 6             Madam Clerk, if you could call the matter

 7   scheduled for 11 o'clock, please.

 8             THE CLERK:  Yes, Your Honor.

 9             Lexington Criminal Action Number 13-36,

10   United States of America versus Troy Mellott, called for

11   sentencing.

12             THE COURT:  Thank you.

13             If counsel could state their appearances,

14   please.

15             MR. HAYNE:  Good morning, Your Honor.

16             THE COURT:  Mr. Hayne.

17             MR. HAYNE:  John Hayne on behalf of the

18   government.

19             THE COURT:  Thank you.

20             MS. HUGHES:  Elizabeth Hughes on behalf of

21   Troy Mellott.

22             THE COURT:  And this is Mr. Mellott that's at

23   counsel table?

24             MS. HUGHES:  It is, Your Honor.

25             THE COURT:  Thank you.
```

1        This matter is scheduled for a sentencing

2   hearing this morning.

3        Before we proceed with the hearing, let me

4   first confirm that Mr. Mellott has had the opportunity to

5   review his presentence report and to discuss the report

6   to his satisfaction with his attorney.

7        Is that correct?

8        DEFENDANT MELLOTT:  Yes, sir.

9        THE COURT:  Mr. Mellott, your presentence

10  report will be placed in the file under seal.  It is

11  available if you should need it for any reason or if

12  the attorney needs it, but it is not available for the

13  general public to review.

14       There have been objections raised to the

15  presentence report that do affect the guideline

16  calculations.  We will need to address those matters

17  before we can proceed with the sentencing hearing.

18       The objections relate to several issues.

19  First, the defendant objects to paragraph 16 and 17.  The

20  defendant takes the position that the firearm that was

21  the subject of the conviction in this case, was not a

22  stolen firearm.

23       So the Court will hear from the parties as to

24  that matter and also will ask if the parties intend to

25  present any evidence with regard to the -- to the

1    firearm.

2              The defendant has also objected to the criminal

3    history section of the report in a number of regards.

4              First, in paragraph 31, the defendant takes the

5    position that the conviction for -- I'm sorry, it's not

6    paragraph 31.  It's the -- it's the West Virginia

7    conviction, paragraph 35.  That that conviction for

8    breaking and entering should not be classified under

9    924(e) as a violent felony.

10             The defendant takes the position it would not

11   constitute -- would not fit within the definition of

12   generic burglary or would not fall within the residual

13   clause of 924(e).

14             Likewise, the defendant takes the position in

15   paragraph 32 that the conviction for burglary occurring

16   on April 1st and also on April 2nd should not be counted

17   as separate convictions, but should instead be counted as

18   one conviction.

19             His position is in that regard that if the

20   Court makes a finding in his favor, that the armed career

21   criminal provisions of 924 would not be applicable to

22   him.

23             I believe those are the objections that do

24   affect the guideline calculations.

25             Ms. Hughes, have I missed any of your

1   objections?

2              MS. HUGHES:  No, sir.

3              THE COURT:  All right.

4              MS. HUGHES:  They are correctly identified.

5              THE COURT:  All right.  Thank you.

6         What is the United States's position with

7   regard to the issue of whether the firearm was stolen?

8         Mr. Hayne, will the United States be presenting

9   any evidence on this point?

10             MR. HAYNE:  Yes, Your Honor.  As to the stolen

11  weapon, Agent Teal would testify.

12        And we just want to confirm that the Court did

13  receive our response to Ms. Hughes's objections?

14             THE COURT:  Yes.  I have received your

15  response, and I have reviewed all of the cases that were

16  cited in your response, as well as in the objections that

17  were made previously in the case.

18             MR. HAYNE:  And we filed a supplemental 924(e)

19  notice.

20             THE COURT:  Yes.

21             MR. HAYNE:  Okay.  Thank you.

22             THE COURT:  That was received, I believe, on

23  the same day.

24        All right.  Yes, sir, and you may proceed if

25  you have evidence to present on the first issue.

1          MR. HAYNE:  Yes, Your Honor.

2          The government would call Officer -- or,

3   I'm sorry, Agent Teal.

4          THE COURT:  Thank you.

5      (Whereupon, the witness, ANTHONY SCOTT TEAL, was

6   placed under oath by the clerk of the Court.)

7          THE COURT:  Thank you.

8          Mr. Hayne, you may proceed.

9                  ANTHONY SCOTT TEAL,

10  having been first duly placed under oath, was examined

11  and testified as follows:

12                  DIRECT EXAMINATION

13  BY MR. HAYNE:

14  Q.   Good morning.

15       Please state your name, and spell the last name.

16  A.   Anthony Scott Teal, last name T-E-A-L.

17  Q.   How are you employed?

18  A.   I'm a special agent with the Bureau of Alcohol

19  Tobacco Firearms and Explosives.

20  Q.   And did you investigate this case involving

21  Mr. Mellott and the pawning of a stolen firearm?

22  A.   I did.

23  Q.   And can you tell the Court specifically about your

24  conversations with the owner of the firearm?

25  A.   Yes.

ANTHONY SCOTT TEAL - DIRECT BY MR. HAYNE                    7

1   Q.    And who was that person?

2   A.    It's Melissa Sparks.

3   Q.    And did she identify herself as the owner of the

4   firearm that Mr. Mellott pawned?

5   A.    Yes.  I showed her a photograph of the firearm, and

6   she identified it.

7   Q.    Did you interview her in regards to the firearm?

8   A.    Yes.

9   Q.    Can you tell the Court about your conversation with

10  her, specifically about whether or not it was stolen and

11  what she had told you?

12  A.    Yes.  I interviewed Melissa on February the 6th in

13  reference to this investigation.  I explained to her

14  about the fact that the firearm was in pawn and that it

15  was pawned by Mr. Mellott.

16       She indicated to me that Mr. Mellott was her

17  boyfriend.  She said that she initially noticed the

18  firearm missing around December 11th, and that there was

19  a location that she kept it.  And that once she noticed

20  it missing, she had asked Mr. Mellott about the firearm

21  and whether or not he had seen it.

22       She indicated that after a conversation that

23  Mr. Mellott wouldn't answer, and he just brushed her off

24  is what she said.

25       She said she became concerned about the firearm

ANTHONY SCOTT TEAL - DIRECT BY MR. HAYNE                    8

1    being gone and about his answers to the questions that

2    she had asked him regarding the firearm.

3         So she approached him again on the 12th and asked

4    again about the firearm, and again he just brushed her

5    off and wouldn't really answer her is what she told me.

6         So she said that she was going to file a police

7    report with the firearm because she couldn't find it and

8    she had looked for it.

9         At that point in time she said that Mr. Mellott

10   indicated to her that he did, in fact, have the gun,

11   and that it was safe and that he had taken the gun, and

12   as a surprise he was going to have it professionally

13   cleaned and that he had bought a nice holster for her

14   and that sort of thing, and he was going to surprise her

15   with it.

16        She said she became even more concerned and sort of

17   gave him an ultimatum that, you know, she was going to

18   call the police, and she wanted to know where her firearm

19   was.

20        At that point she said that he had admitted to her

21   that he, in fact, pawned the firearm because he needed

22   money for, I believe, it was for child support or some

23   fines, to pay some bills.

24        So that was her conversation with me.  She did end

25   up going to the pawn shop, and she spoke with the pawn

ANTHONY SCOTT TEAL - CROSS BY MS. HUGHES          9

1  shop owner about the gun and indicated to him that it was

2  stolen as well.

3      And he had contacted me after that and was wanting

4  to know how, in fact, we could get her gun back to her

5  with the fact that it had been stolen.

6  Q.   Thank you.

7      Will the gun ultimately be returned to Ms. Sparks?

8  A.   It will.

9          MR. HAYNE:  Thank you.  That's all the

10  questions I have, Your Honor.

11          THE COURT:  All right.  Thank you.

12          Ms. Hughes, you may question the witness.

13          MS. HUGHES:  Thank you, Your Honor.

14                 CROSS-EXAMINATION

15  BY MS. HUGHES:

16  Q.   Special Agent Teal, in your conversation -- in your

17  conversation with Ms. Sparks that took place in February,

18  you learned that she, in fact, had never filed a police

19  report; correct?

20  A.   That's correct.

21          MS. HUGHES:  That's all I have.

22          THE COURT:  All right.  Thank you.

23          Anything else?

24          MR. HAYNE:  Nothing else.  Thank you, Judge.

25          THE COURT:  Thank you.

1          Special Agent, you may step down.

2          THE WITNESS:  Thank you.

3          THE COURT:  Will the United States be offering

4    any proof as to the additional objections filed by the

5    defendant?

6          MR. HAYNE:  No additional proof, Your Honor.

7          THE COURT:  All right.  You will be relying

8    upon the documents supporting the convictions in these --

9          MR. HAYNE:  That's correct.

10          THE COURT:  -- matters?

11          All right.  Thank you.

12          Ms. Hughes, any proof that you would like to

13    offer at this time?

14          MS. HUGHES:  I don't have additional proof,

15    Your Honor.

16          THE COURT:  All right.  Thank you.

17          In that event, I will hear from the parties.  I

18    will hear arguments from the parties with regard to the

19    objections that have been filed by the defendant.

20          Let's see, Ms. Hawkins or Mr. Hayne, who will

21    be addressing these matters on behalf --

22          MR. HAYNE:  I will be addressing them.

23          THE COURT:  -- of the United States?

24          All right.  Thank you.

25          You may proceed.

1        MR. HAYNE:  Thank you, Your Honor.

2        I'll just go in chronological order of -- or

3   the order of Ms. Hughes' brief.

4        As to regards to the West Virginia conviction

5   that would apply as enhancement for the armed career --

6   armed career criminal purposes, as the -- our briefs

7   noted in United States versus Davis, the Fourth Circuit

8   looked at this specific statute for purposes of applying

9   a breaking and entering conviction to this Armed Career

10  Criminal Act.

11       In that case the trial court had said, yes,

12  this falls under the generic definition of burglary.

13       However, the Fourth Circuit did say, no, not

14  necessarily, because there's the additional attempt

15  element in that case, which this case does not have, the

16  Court said, we need to look at this even further.

17       The Fourth Circuit then looked at the modified

18  categorical approach, and said it does fall within the

19  residual provision of 924(e).

20       So, Your Honor, I would say in this case, the

21  facts of the underlying convictions are almost identical

22  in both cases.  In the Davis case, the person broke into

23  a business establishment for the purposes of stealing

24  from a lottery machine.

25       In this case Mr. Mellott had broken into a --

1    I'm sorry, that was Mr. Mellott's case.  In the other

2    case, in the Davis case, the defendant had broken into a

3    church for the purposes of committing larceny.

4            In both cases we have someone breaking into a

5    building for the purposes of committing a theft.

6            For that reason, Mr. Mellott's conviction not

7    only applies to the generic definition of burglary, which

8    there was, it was the unlawful entry into the building

9    for the purposes of committing a crime.  It would

10   certainly fall under the residual provision as outlined

11   by United States versus James and the Davis Court because

12   of the potential risk that a burglary creates, that the

13   person could be confronted by a police officer or an

14   innocent bystander.  It presents this risk to an ordinary

15   citizen.

16           And for these reasons, it would certainly fall

17   under the residual provision of 924(e).

18           THE COURT:  You kind of jumped over one step, I

19   think, in the analysis.

20           Under Shepherd and Taylor, the Court can

21   consider first whether it falls within the generic

22   definition of burglary, and the Court looks at the

23   elements of the offense.  And under West Virginia law,

24   the statute -- the question is whether the statute would

25   include only burglary or whether it could include

1   something else.  In other words, could the defendant be

2   convicted for some other offense that would fall outside

3   the generic definition of burglary but still fall within

4   the definition of the statute?

5          For example, breaking into a car, to a boat,

6   perhaps to an outbuilding, not attached to a structure,

7   if -- if it can include more things than just generic

8   burglary, then the question becomes what additional

9   documents may be reviewed, and that's a Shepherd

10  analysis.  What Shepherd-type documents may be reviewed

11  in making the determination as to whether this fits

12  within the definition of generic burglary?

13         And in this particular case, the -- there have

14  been documents that have been attached that would include

15  the criminal complaint and the indictment, which would

16  indicate that the defendant, in fact, broke into the

17  night club for the purpose -- and then the criminal

18  complaint would indicate -- the indictment and the

19  criminal complaint indicate that it would be for

20  committing another offense.  But the criminal complaint

21  indicates that it's stealing from a lottery machine, has

22  specific information.

23         So that would be sufficient.  But even if not,

24  then the Court can look at whether this would fall within

25  the residual clause of 924(e), whether it would be

```
 1   otherwise considered a violent felony.  Isn't that really
 2   where the Fourth Circuit -- the Fourth Circuit said not
 3   only would this fit within a Shepherd-type analysis, but
 4   in the event that it didn't, it still would be a violent
 5   felony under the residual clause.  Wasn't that the
 6   analysis?
 7             MR. HAYNE:  That was the analysis, Your Honor.
 8             THE COURT:  All right.
 9             MR. HAYNE:  In that particular case it didn't
10   fit under the generic definition because of this added
11   attempt element, that this particular case did not have,
12   which I think makes Mr. Mellott's prior conviction even
13   stronger because as the trial court in Davis said, it
14   does fit under the generic definition of burglary.
15             So I think in this case it applies under both,
16   looking at the Shepherd documents and state court
17   indictment, and under business establishment for the
18   purposes of committing a crime therein, the larceny or
19   theft on the lottery machines.  So not only the generic
20   definition, it falls under the residual provision for
21   violent crimes.
22             THE COURT:  All right.  Now, there's a closer
23   question relating to -- in my opinion, a closer question
24   relating to these other two offenses that are charged or
25   the convictions that occurred for actions taking place on
```

1   April 1st and April 2nd, as reflected in paragraph 32 of

2   the presentence report.

3           MR. HAYNE:  Yes, Your Honor.  As the Sixth

4   Circuit has said when determining whether or not we have

5   separate and distinct criminal episodes, there's a

6   three-part test and --

7           THE COURT:  And that's set forth in Banner.

8           MR. HAYNE:  That's correct.

9           THE COURT:  U.S. versus Banner.

10          MR. HAYNE:  Yes, Your Honor.  The government

11  argued that in this particular case we'd ask the Court to

12  consider that it's possible to discern at the point at

13  which the first offense is completed and the subsequent

14  point at which the second offense begins.

15          In this particular case, other than the fact

16  that it was the same residence, we have two separate

17  convictions, on two separate days, and the state court

18  indictment indicates that on the first burglary

19  conviction, he went into the house, entered the

20  residence, stole over $300 in cash.

21          And then on the subsequent day, entered the

22  residence and stole personal property, such as

23  electronics and whatnot.

24          The indict -- he pled to two separate crimes.

25  They were on two separate days.  Two separate thefts

1    occurred.  And there's nothing to suggest that this was a

2    crime spree or they occurred just minutes apart.  The --

3    other than the fact they're a day apart, the two crimes

4    can be clearly distinguished that one began on one day

5    and one began on the next day.

6              THE COURT:  Now, this is not the type of

7    analysis that the Court would be limited to Shepherd-type

8    documents.  The Court could consider any evidence on this

9    point that would have an indicia of reliability attached

10   to it.

11             Are there documents that would indicate when

12   the first and second thefts occurred, specific times?

13             MR. HAYNE:  Specific times of day?

14             THE COURT:  Uh-huh, police reports, things of

15   that nature.

16             MR. HAYNE:  If I could have one moment,

17   Your Honor --

18             THE COURT:  Yes, sir.

19             MR. HAYNE:  -- to check on this.

20             We're going to check on that.  I think our --

21             THE COURT:  All right.

22             MR. HAYNE:  -- prior convictions contained the

23   judgment and indictments and not necessarily specific

24   police reports.

25             Your Honor, we don't have those specific

17

1    documents, but I would also just mention what I did

2    include in the brief was in United States versus Roach,

3    the Sixth Circuit did cite to a First Circuit case

4    summarizing as a burglary at the same house on different

5    nights constituted two criminal episodes for purposes of

6    924(e).  That is what appears to be the case here with

7    the indictment alleging two separate counts of burglary

8    on two separate days, alleging different items stolen on

9    each case.

10             THE COURT:  All right.

11             Mr. Hayne, I may come back to you on that.  I

12   do want to hear from Ms. Hughes on these issues.

13             MR. HAYNE:  And just briefly, Your Honor, the

14   third argument with regards to the stolen firearm's

15   enhancement.

16             THE COURT:  Yes.

17             MR. HAYNE:  As the Court is aware, it is a

18   minimal standard of reliability, which the Sixth Circuit

19   has said is a relatively low hurdle.

20             Agent Teal testified the owner of the weapon's

21   statement was that the gun was stolen without her

22   permission.

23             At this point there's no reason to doubt the

24   veracity of that claim, and for these reasons, we would

25   ask the Court to make a finding that the gun was stolen

1   for enhancement purposes.

2              THE COURT:  All right.  Thank you.

3              Ms. Hughes?

4              MS. HUGHES:  I have to -- regrettably, I have

5   to concede the first point, vis-a-vis the West Virginia

6   conviction, but I think that at the time I filed the

7   objection, it was duly warranted as the proper Shepherd

8   documents had not been filed in the record.

9              THE COURT:  Yes.

10             MS. HUGHES:  And I feel like that's the

11  government's burden, and they had not met it, and so

12  there we have it.

13             THE COURT:  Yes.

14             MS. HUGHES:  But I do acknowledge now the

15  indictment is in the record, and it does say

16  intentionally entered a building for an unlawful

17  purpose --

18             THE COURT:  All right.

19             MS. HUGHES:  -- so...

20             THE COURT:  As to the -- to the second issue

21  dealing with these two convictions, April 1st and

22  April 2nd, what is the position of the defendant on

23  that?

24             MS. HUGHES:  And my position on that is simple.

25  Again, I believe it's the government's burden to

1   establish that they're separate convictions.  I do

2   acknowledge there's an indictment, and it says April 1

3   and April 2, but we do have -- and I agree with the

4   Court.  This is not a Shepherd issue now.  The issue --

5   as I read the case law, it opens it up to essentially

6   having a hearing so that the Court can make a finding on

7   whether or not these factors, you know, how they weigh.

8           And, again, I believe it's the government's

9   burden to establish that the armed career criminal

10  applies, so I think that we're here with the Court

11  without sufficient information to -- to discern.

12          I do understand how the government is reading

13  the indictment in trying to interject information into

14  it.  For example, on two subsequent nights.  Well, we

15  don't know whether they're nights, and we don't -- and we

16  don't know when.  And I just don't think the Court --

17  it's a big deal, the Armed Career Criminal Act, and I

18  don't think the government has met its burden on that.

19          With respect to the stolen firearm, obviously,

20  that's irrelevant for purposes of sentencing to the

21  extent that he's an armed career criminal.

22          Nonetheless, I appreciate that we're not doing

23  double hearsay now because Special Agent Teal has

24  testified.

25          But, you know, I didn't doubt the veracity of

1    his report in any event.  I'm questioning the reliability

2    of what the -- at the time girlfriend -- and what she

3    said.  She didn't file a police report.  She only

4    reported this after the ATF had come to her.  She wants

5    to get her firearm back.

6             And so I would suggest to the Court that there

7    is equally indicia of a likelihood that it's not true.

8    And in that case, I think that the Court should rule in

9    favor of the defendant.

10            THE COURT:  All right.

11            MS. HUGHES:  Thank you.

12            THE COURT:  Thank you.

13            In preparing the presentence report, let me ask

14   the probation officer if he was able to obtain any

15   documents from the, I guess this would be, the Jessamine

16   Circuit Court that would indicate police reports, or

17   copies of indictments, anything of that nature,

18   documentary -- documents that would be filed in the

19   record.

20            PROBATION OFFICER:  Yes.

21            THE COURT:  Mr. Robinson.

22            PROBATION OFFICER:  First of all, I have two

23   uniform citations --

24            THE COURT:  All right.

25            PROBATION OFFICER:  -- documenting each of the

1  burglary arrests.

2          THE COURT:  These are documents you obtained,

3  copies that you obtained?

4          PROBATION OFFICER:  These are copies that we

5  obtained.  Probation office obtained ourselves.

6          THE COURT:  All right.

7          PROBATION OFFICER:  The -- on the second

8  burglary -- well, let me just go to the first burglary.

9  We have that where the arrest was made on April 5th, but

10  it does not list the violation time.  And it makes

11  indication that the subject wrote out a written

12  confession to breaking in a residence at the -- at the

13  victim's address.

14          The second uniform citation lists the second

15  violation as occurring on April 2nd, at 9:30 in the

16  morning, 0930 hours.  In 24 hours time it is 9:30 in the

17  morning.  Same address.

18          THE COURT:  Just let me look at those two

19  documents, and I'm going to give those to the attorneys

20  to review as well.

21          Thank you.

22          If you could pass these over to the attorneys

23  to take a look at.  You can give to Ms. Hughes first, and

24  if you'd pass those to Mr. Hayne after Ms. Hughes has a

25  chance to review.

1               All right.  Thank you.  Thank you.

2               MR. HAYNE:  Thank you, Your Honor.

3               THE COURT:  Thank you.

4               If you would retrieve those for me, please.

5               All right.  Thank you, Counsel.

6               Let me take these objections in -- in the

7     following order.

8               First, I do want to address the objection to

9     paragraphs 16 and 17, which center on the question of

10    whether the firearm was, in fact, stolen.

11              There is testimony that has been presented by

12    the special agent in the case regarding his interview

13    with the owner of the firearm.  Specifically, the agent

14    identified himself as an agent, so the individual first

15    understood the gravity of the situation and the

16    importance -- in this Court's opinion, the importance of

17    being honest and truthful, while counsel for the

18    defendant indicates that perhaps it may have been

19    fabricated at the last moment.

20              The other circumstantial evidence in the case

21    would indicate that the witness was being truthful.  She

22    identified the gun as being her gun, and she provided an

23    explanation as to what she had done in attempt to locate

24    the gun when she found it was missing.  She confronted

25    the defendant.

1            And shortly afterwards the defendant shows up

2    at the pawn shop not with the owner but with his father

3    attempting to receive the gun back that had been pawned.

4    And there is indication that the defendant had initially

5    pawned it himself.

6            So it does appear to the Court that what's

7    happened is the defendant returned back with someone that

8    had the ability, the money, to take the gun out of pawn

9    after he was confronted with -- by his girlfriend with

10   possibility that she was going to report this theft, and

11   so he was attempting to avoid that from occurring.

12           But it does appear to the Court that, in fact,

13   by that point the gun had been stolen and so -- by the

14   defendant, which would be consistent with the version of

15   events that was given by the owner to the special agent.

16           So for those reasons I do find there is

17   sufficient indicia of reliability to accept that

18   information, to credit that information, and based upon

19   that evidence the Court will overrule the objections to

20   paragraphs 16 and 17.

21           With regard to the conviction from

22   West Virginia, although the point has been conceded, the

23   counsel for the defendant is correct that it is the

24   United States' burden to present these documents that

25   establish the necessary element that would constitute

1  either a generic burglary or a violent felony under

2  924(e).

3          Those documents were supplied, and they do

4  provide the necessary information upon which the Court

5  can make a determination, can actually make two

6  determinations.

7          First, that the conviction for breaking and

8  entering would fit the generic definition of burglary

9  when the Court considers the approved Shepherd-related

10 documents under the modified categorical approach in

11 making that determination under 924.

12         The Court does find that that would be a

13 qualifying felony, a violent felony under the statute.

14         A closer question is presented with regard to

15 the question of whether the convictions shown

16 in paragraph 32 would be separate offenses.  And the

17 Court has referenced United States versus Banner in

18 making this determination.  In Banner the Court outlines

19 three questions, which it indicates as three factual

20 indicia from previous decisions in determining whether

21 the offenses are separate from one another under the

22 Armed Career Criminal Act.

23         First, the offenses are separate if it's

24 possible to discern the point at which the first offense

25 is completed and the subsequent point at which the second

1  offense begins.

2          Second, two offenses are committed for armed

3  career criminal purposes if it would have been possible

4  for the offender to cease his criminal conduct after the

5  first offense and withdraw without committing the second

6  offense.

7          And then finally, separate offenses are

8  committed if the offenses are committed in different

9  residences or business locations.

10         Now, any of these tests can be met.  It's not

11 necessary to meet all three.

12         The third test would not be applicable here

13 because the parties all agree that the -- that the

14 burglaries occurred in the same location but on separate

15 dates.

16         There is case law from the Sixth Circuit that

17 would indicate that -- that certainly it would be

18 qualifying -- or the offenses would be qualifying, even

19 if they are committed in the same location and in the

20 relatively close proximity in terms of time.

21         So that would not be disqualifying factors, but

22 the question becomes whether either of the first two

23 indicia, factual indicia, would be satisfied.

24         In this particular case the Court finds that

25 both the first and second indicia, factual indicia, are

1    met.  It is possible to discern based upon the

2    information that has been presented, and that is the

3    records that had been presented from the conviction in

4    the Jessamine Circuit Court.  It's possible to discern

5    the point at which the first offense was completed and

6    the subsequent point at which the second offense begins.

7             Specifically, information contained in

8    paragraph 32 would indicate that one offense occurred on

9    April 1st, 1996, and the second offense occurred on

10   April 2nd, 1996.

11            Specifically, that the second offense would

12   have occurred on or about 9:30 a.m., which would be at

13   least nine-and-a-half hours after the completion of the

14   first offense.  The first offense is not charged to have

15   occurred on April 1st and 2nd, but it's charged as having

16   occurred on April 1st, and the defendant entered a plea

17   of guilty to that separate offense, two separate offenses

18   charged and the two counts of conviction, although, the

19   sentences did apparently run concurrent on those matters.

20   But, again, it's not disqualifying.

21            Additionally, it is possible to -- for the

22   Court to make a determination that the two offenses were

23   committed such that it was possible for the offender, in

24   this case the defendant, to cease his criminal conduct

25   after committing the first offense.  In other words, it

1    was not necessary that he continued with the offense on

2    April 2nd.  He could have stopped his criminal conduct on

3    April 1st.

4              There's no indication that there was someone

5    present in the residence on April 1st, that he was

6    attempting to subdue, anything of that nature.

7              Anything that would fit within the exceptions

8    that have been outlined in a number of other cases

9    that -- where the Sixth Circuit has found that the

10   offenses were, in fact, one offense, such as

11   United States versus Murphy, or United States versus

12   Thomas, which are cases that are referenced in

13   United States versus Hill, decision of the Sixth Circuit,

14   from 2006, citations 440 Federal 3d 292.  That's a case

15   that was cited by the United States in its memorandum.

16             So the Court finds based upon that information

17   that they are both -- both of those indicia, factual

18   indicia, have been met; and, therefore, those two

19   burglary offenses should be counted as separate offenses.

20             Based upon the Court's findings, the objections

21   to the presentence report will be overruled.

22             The Court does find that the defendant has

23   qualifying convictions that do -- that do qualify him as

24   an armed career criminal.

25             The Court having resolved all pending

1   objections, I will adopt the findings that are contained

2   in the presentence report, as well as the following

3   guideline calculations.

4           The calculations do begin at paragraph 14 of

5   the presentence report on page 5.  The 2012 edition of

6   the guideline manual has been used.

7           Of course, the base offense level in the case

8   would be a level 14.

9           There are the two enhancements that are set

10  forth in paragraphs 16 and 17.  That would increase the

11  offense level to 20.

12          In this particular case, however, the defendant

13  as much as he qualifies as an armed career criminal under

14  the statute, his offense level does become 33.

15          There is a three-level reduction shown for

16  acceptance of responsibility in the case.  Before the

17  Court can award the third level of acceptance, it does

18  require a motion from the United States.

19          Mr. Hayne?

20          MR. HAYNE:  Yes, Your Honor, we will make that

21  motion.

22          THE COURT:  The motion will be sustained, and

23  the Court will apply a total of three-levels reduction

24  for acceptance of responsibility, and that reduces the

25  total offense level to a level 30.

1           Information regarding the defendant's criminal

2    history is set forth in the report and is contained in

3    paragraph 45.  He has 17 criminal history points that

4    would place him in criminal history category 6.

5           Of course, under the guidelines, because he is

6    an armed career criminal, he would be in criminal history

7    category 6 even if his score had been lower.  But in this

8    case he is criminal history category 6.

9           That does create a guideline range in the case

10   as set forth in paragraph 67.  And based upon the

11   defendant's status as an armed career criminal, the

12   guideline range in the case becomes a range of 180 to

13   210 months.

14          The guideline range for supervised release

15   would be a range of two to five years as set forth in

16   paragraph 70.

17          And the fine range in the case would be a range

18   of 15,000 to $150,000 as set forth in paragraph 75.

19          Again, those are the guideline calculations

20   that the Court has adopted.

21          The defendant entered a plea of guilty without

22   the benefit of a written plea agreement, but I believe

23   that there are -- I believe there are counts that may

24   need to be dismissed in the case.

25              Is that accurate?

1          MR. HAYNE:  Yes, Your Honor.  The government

2    would move to dismiss Counts 2 and 3 of the indictment.

3          THE COURT:  All right.  That motion will be

4    sustained.  Those counts will be dismissed effective upon

5    entry of the judgment in the case.

6          All right.  Unless there are further motions to

7    be taken up, we will proceed with allocution.

8          I'll hear from Ms. Hughes first and also from

9    Mr. Mellott if he would like to address the Court.

10          After I hear from the government, Ms. Hughes,

11    I will give you the last word if you would like to take

12    it.

13          MS. HUGHES:  Thank you, Your Honor.

14          You know, obviously there's a 15-year mandatory

15    minimum or the 100 -- makes 180 essentially the low end

16    of the guidelines.

17          And it would be our request that the Court

18    consider sentencing him at that low end of 180 months.

19          Mr. Mellott's record certainly is disturbing,

20    but, nonetheless, I -- I have to say that all of his

21    experiences have been in state court, and obviously

22    federal court is quite a different ball game and is quite

23    shocking to folks who find themselves in this position,

24    never having dreamed that this particular offense would

25    have such dire consequences.

1              Mr. Mellott has been very easy to work with.

2    He has been cooperative, and he appears to be truly aware

3    of the opportunities and the family support.  He has a

4    great deal of -- he has a very supportive family.  His

5    father is here in the courtroom, that he has essentially

6    squandered up until now.  He seems to be genuinely

7    determined to take advantage of whatever opportunities,

8    training, et cetera, are offered in prison, and does seem

9    to be committed to being a productive member of society

10   upon the completion of service of his term.

11             So we would ask the Court to sentence 180

12   months.

13             THE COURT:  All right.

14             MS. HUGHES:  Thank you.

15             THE COURT:  Thank you.

16             Mr. Mellott, would you like to add anything to

17   what Ms. Hughes has said on your behalf?

18             DEFENDANT MELLOTT:  No, sir.

19             THE COURT:  All right.  Thank you.

20             Mr. Hayne?

21             MR. HAYNE:  Thank you, Your Honor.

22             Your Honor, taking into account the sentencing

23   factors, Section 3553(e), the history of Mr. Mellott, the

24   facts and circumstances of this case, the need for

25   deterrence of future crimes, the government would

1    recommend a low end of the guideline range, Your Honor.

2            THE COURT:  All right.  Thank you.

3            In making a determination as to an appropriate

4    sentence in the case, of course, the Court begins with

5    the -- with the guidelines.  In this case, of course, the

6    guideline range is affected by the mandatory minimum term

7    of 15 years.  The Court can't go below that by statute.

8            When the Court looks at the factors under

9    Title 18 Section 3553, quite frankly, they do support a

10   sentence within the range.

11           The defendant does have troubling criminal

12   history.  I'll go into a little more detail on that in

13   just a moment.

14           But the nature of the defendant's conduct in

15   the past does include his criminal history.  And while

16   that criminal history is included in his score that

17   affects his guideline range, it is important for the

18   Court to look at the nature of the defendant's criminal

19   history because that is a reflection of the need to

20   protect the public, as well as the analysis that the

21   Court undertakes when it determines to find what's

22   necessary to deter future criminal conduct.

23           And in this case when the Court looks at

24   criminal history, it does begin at an early age, age 18,

25   with a criminal trespass in Pennsylvania, essentially a

1    breaking and entering to steal baseball cards.

2              And then again at age 18, we have the two

3    burglaries that we had discussed earlier in Jessamine

4    County that occurred one day apart where the defendant

5    broke into a home and stole not only cash but some

6    personal property as well.

7              And then we have at age 26 -- and we have a bad

8    check charge at age 25, but then at age 26 the breaking

9    and entering in West Virginia that we also discussed,

10   broke in and then he took some money from a lottery

11   machine.

12             Then we have other types of criminal conduct at

13   age 32, attempted theft of a controlled substance.

14             And then at age 32 as well, attempt to obtain

15   controlled substance by fraud and illegal processing of

16   drugs.

17             So we have some serious criminal history that

18   has been committed over a number of years, and that does

19   indicate that the defendant is a danger to the public.

20   That, again, is one of the factors that this Court

21   considers under 3553.

22             So the nature and circumstances of this offense

23   are serious.  An individual that has this type of

24   criminal history, of course, should not be possessing a

25   firearm.

1            His history and characteristics are serious in

2 terms of his danger to the public.

3            The Court will impose a sentence that reflects

4 that not only the seriousness of the offense but the need

5 to promote respect for the law and provide for just

6 punishment.

7            And in this case a sentence within the

8 guidelines, as I indicated earlier, I believe is needed

9 to provide deterrence to future criminal conduct.

10            It does appear that this defendant has been

11 cooperative, as counsel indicates, and he certainly

12 appeared that way when he's appeared before this Court.

13            He does have some family support, but he hasn't

14 taken full advantage of that to this point in his life.

15            And it's -- it has been my experience that a

16 number of individuals are sometimes shocked when they do

17 appear in federal court after having a number of

18 convictions in state court with no real punishment.  And

19 sometimes I do comment that I'm not sure that the state

20 courts are really doing a service to defendants by the

21 type of sentences that are imposed because sometimes it

22 gives the false impression that an individual can commit

23 relatively serious offenses and not receive any

24 punishment.  And that's certainly what I've seen with

25 individuals that have been convicted in this Commonwealth

1    in state courts.  That is troubling, but it's something

2    that this Court really is without any power to do

3    anything about.

4              But when a defendant appears before the Court

5    on a charge such as this, this Court must impose an

6    appropriate sentence, and in this case both parties have

7    recommended a sentence at the low end of the guideline

8    range.

9              While perhaps a higher sentence may be

10   justified based upon the parties' recommendations in the

11   case, the Court is not going to go above 180 months.  I

12   do believe when I take into account all factors, that

13   would be a sentence that would be sufficient and not

14   greater than necessary to comply with all the purposes

15   that have been -- have been mentioned.

16             The Court also considers the need for the

17   sentence to avoid unwarranted sentencing disparities, and

18   such a sentence at the bottom of the guideline range in

19   this case would not be an unwarranted disparity.

20             Let me announce the sentence.  And it will be

21   the sentence of this Court pursuant to the Sentencing

22   Reform Act of 1984 as amended and modified by the

23   decisions in Booker and Fanfan, and I do believe the

24   following sentence would be sufficient but not greater

25   than necessary to comply with the purposes of Title 18

1    Section 3553.

2            Accordingly, it will be the judgment of the

3    Court that the defendant Troy Lee Mellott will be

4    committed to the custody of the Bureau of Prisons for a

5    term of 180 months.

6            It will be recommended that he participate in

7    the Bureau of Prisons Residential Drug Abuse Program, the

8    RDAP program, during his period of incarceration.

9            Upon release he will be placed on supervised

10   release for a term of five years, and within 72 hours of

11   release from the custody of the Bureau of Prisons, he

12   shall report in person to the probation office in the

13   district in which he is released.

14           While on supervised release, he shall not

15   commit another federal, state, or local crime, shall

16   comply with the standard conditions that have been

17   adopted by this Court, and shall comply with the

18   following additional conditions.

19           He shall not possess a firearm, destructive

20   device, ammunition, or a dangerous weapon.

21           He shall submit to one drug test within 15 days

22   of release and at least two periodic drug tests

23   thereafter.

24           And he will be required to comply with the

25   following either standard or special conditions.

1           First, he must participate in a Substance Abuse

2   Treatment Program and submit to periodic drug and alcohol

3   testing at the direction and discretion of the probation

4   office during the term of supervision.

5           He will be required to pay the cost of

6   treatment services to the extent that he's able to do so

7   as determined by the probation office.

8           And based upon the nature of this offense and

9   the need to provide necessary protection to the extent

10  possible to probation officers that will be subject --

11  will be supervising the defendant, I will impose a search

12  condition; that is, he will be required to submit his

13  person, residence, curtilage, office, or vehicle to a

14  search upon the direction and discretion of the probation

15  office.

16          I am also going to impose the special

17  conditions with regard to prescription medications that

18  have been adopted in this district, and that would

19  include the fact that the defendant will be required to

20  provide the probation office within seven days of release

21  from the custody of the Bureau of Prisons with a written

22  report in a form that the probation office directs,

23  listing each and every prescription medication in his

24  possession, custody, or control.

25          The list shall include but is not limited to

1    any prescription medication that contains a controlled

2    substance, and it encompasses all current, past, and

3    outdated or expired prescription medications in the

4    defendant's possession, custody, or control at the time

5    of the report.

6            Mr. Mellott will be required to notify the

7    probation office immediately, and that is within no later

8    than 72 hours, if he receives a prescription for

9    medication containing a controlled substance during the

10   term of supervised release, and he will be required to

11   provide the probation office with such documentation and

12   verification as the probation office may reasonably

13   request and in a form that it directs.

14           And he must also comply strictly with the

15   orders of any physician or other prescribing source with

16   respect to the use of all prescription medications.

17           And he must report any theft or destruction of

18   any prescription medication to the probation office

19   within 72 hours of any such theft or destruction.

20           Now, based upon the defendant's current

21   financial situation, I am going to waive the fine

22   requirement in the case.  The defendant does not have the

23   ability to pay a fine.

24           But he will be required to pay the $100 special

25   assessment.  That will be due immediately.

1          I'm also going to direct the clerk of the Court

2   to file the two citation forms that the Court had cited

3   earlier.  These were documents obtained by the probation

4   officer in the course of preparing the presentence

5   report.  The originals will be returned to the probation

6   officer, but the clerk will file copies of those citation

7   reports as an addendum to this hearing.

8          At this time let me ask if there is any

9   objection to the sentence imposed by the Court, first.

10          Second, if there is any Bostic objections.

11   Of course, that would include any objections not

12   previously raised so that the Court may address any

13   additional matters and that they may be reserved for any

14   appeal.

15          And then, finally, I'll ask if the parties

16   would like the Court to make additional findings to

17   support the sentence that has been announced.

18          Mr. Hayne?

19          MR. HAYNE:  No.  Thank you, Your Honor.

20          THE COURT:  All right.  Thank you.

21          Ms. Hughes, other than the objections that were

22   raised previously, any additional objections?

23          MS. HUGHES:  I raised every one I could think

24   of, Your Honor.

25          THE COURT:  All right.  And those are preserved

1  for the record.  I believe that one may have been

2  withdrawn.  So we're clear on that, that was the

3  conviction from West Virginia.  That was withdrawn, but

4  you've preserved the objections as to the remaining

5  issues that were raised.

6          MS. HUGHES:  That is correct.  I have no

7  additional objections.

8          THE COURT:  All right.  Any request for

9  additional findings?

10          MS. HUGHES:  No, sir.

11          THE COURT:  All right.  Thank you.

12          MS. HUGHES:  I did --

13          THE COURT:  Yes, ma'am.

14          MS. HUGHES:  Would the Court be willing to make

15  a recommendation that he be assigned to the BOP facility

16  closest to his home, which is Jessamine County, Kentucky.

17  I mean, to the extent -- the closest to home that he

18  qualifies for.

19          And also I didn't pay close enough attention to

20  those citations the Court is going to file in the record.

21          THE COURT:  Yes, ma'am.

22          MS. HUGHES:  But if there's a need for

23  redaction, will the Court pay attention to that?

24          THE COURT:  What I'll do is I'll let you look

25  at those when we finish here in a moment.  And if you

1  believe any redaction is necessary, I will certainly make

2  that.  I want to make sure that what I looked at is

3  preserved for the record, but in terms of what gets filed

4  for public's view -- the public's view, we'll make any

5  necessary redactions that either party requests.

6          MS. HUGHES:  Right.

7          THE COURT:  We'll keep one copy under seal.

8          MS. HUGHES:  I can't recall if the Social

9  Security number was in that and what there is.  So we'll

10  take a look at it after court.

11          THE COURT:  All right.

12          MS. HUGHES:  Thank you.

13          THE COURT:  All right.  Thank you.

14          Madam Clerk, if you could please advise

15  Mr. Mellott of his rights of appeal.

16          THE CLERK:  Yes, Your Honor.

17          You are notified by this Court that you have

18  the right to appeal your case to the Sixth Circuit Court

19  of Appeals, which on proper appeal will review this case

20  and determine that there has or has not been an error of

21  law.

22          However, a defendant may waive those rights as

23  part of a plea agreement, and you have not entered into a

24  plea agreement.  Such waivers are generally enforceable,

25  but if you believe the waiver is unenforceable, you can

1    present that theory to the appellate court.

2             If you do not have sufficient money to pay for

3    the appeal, you have a right to apply for leave to appeal

4    informa pauperis, which means you may appeal without

5    paying for it.

6             If you are without the services of an attorney

7    and desire to appeal and so request, the clerk of this

8    Court shall prepare and file forthwith a notice of appeal

9    on your behalf.

10            With few exceptions this notice of appeal must

11   be filed within 14 days from the date of entry of this

12   judgment.

13            If you do not have sufficient funds to employ

14   an attorney, the Court of Appeals may appoint your

15   present attorney or another to prosecute the appeal for

16   you.

17            You may request to be released on a reasonable

18   bond pending appeal.

19            THE COURT:  Thank you.

20            Mr. Mellott, you're about to be given what was

21   just read.  I do want you to take a look at that, review

22   it.  Please make sure that you do understand your rights

23   of appeal.

24            After you have done so, if you could sign the

25   original.  And, of course, there is one copy that you can

1   keep for yourself.

2          And, again, I will note for the record that the

3   defendant did not waive any rights of appeal with regard

4   to his guilty plea, conviction, or the sentence imposed

5   in the case and did not -- there is not a written plea

6   agreement, but the government did agree at the time that

7   he entered his plea to dismiss those additional counts

8   that have been dismissed in the case.

9       (Whereupon, the defendant, Troy Lee Mellott, signs

10  the form.)

11          THE COURT:  Thank you.

12          Are there any additional matters that need to

13  be taken up at this time?  Mr. Hayne?

14          MR. HAYNE:  No, sir, no matters.

15          THE COURT:  Ms. Hughes?

16          MS. HUGHES:  No, sir.

17          THE COURT:  All right.  Thank you.

18          Ms. Hughes, if you and Mr. Hayne and

19  Ms. Hawkins would like to take a look at those two

20  documents that were referenced when we conclude here, you

21  can advise the courtroom deputy as to whether any

22  redactions are necessary before those matters are filed

23  in the record.

24          And I believe our next matter is scheduled for

25  1:30.

1              THE CLERK:  Yes, Your Honor.

2              THE COURT:  We will be in recess until that

3 time.

4        (Whereupon, the Sentencing Hearing proceedings

5 concluded at 11:55 a.m.)

6                    C E R T I F I C A T E

7        I, Peggy W. Weber, certify that the foregoing is a

8 correct transcript from the record of proceedings in the

9 above-entitled matter.

10

11

October 9, 2013                    s/Peggy W. Weber
12      DATE                       PEGGY W. WEBER, RPR

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    W  I  T  N  E  S  S  E  S

 2

 3                                                 Pages

 4   PROOF ON BEHALF OF THE GOVERNMENT:

 5   Testimony of ANTHONY SCOTT TEAL
            Direct Examination by Mr. Hayne          6
 6          Cross-Examination by Ms. Hughes          9

 7
     Certificate of Reporter                        44
 8   Index of Witnesses                             45

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```